1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JOHN WESLEY WILLIAMS,              No. CIV S-08-1737-WBS-CMK-P

12          Plaintiff,

13       vs.                           FINDINGS AND RECOMMENDATIONS

14   A.J. MALFI, et al.,

15          Defendants.

16   _____/

17          Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is the motion to dismiss (Doc. 20) brought by

19   defendants Kelly, Grannis, and Carroll.  Also pending before the court is plaintiff's motion for

20   injunctive relief (Doc. 22).

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26

1

## I. BACKGROUND

### A. Plaintiff's Allegations

This action proceeds on plaintiff's amended complaint (Doc. 18).  Plaintiff names the following as defendants:  Malfi, Kelly, Young, Grannis, Lippsmeyer, Hsu, Carroll, and the law firm of Lawrence, Beach, Allen, and Choi.[1]  Plaintiff states that, upon arriving at California State Prison – Sacramento ("CSP-Sac.")[2] in December 2004, he "began having extreme difficulties with filing administrative inmate appeals. . . ."  Specifically, plaintiff asserts that defendant Malfi, the prison warden, permitted subordinates to "deliberately frustrate plaintiff's appeal efforts in order to cover up misconduct by prison . . . officials."  Plaintiff states that, in early 2005, he filed a habeas corpus petition in the Sacramento County Superior Court regarding this claim.[3]

According to plaintiff, the state court granted his motion for appointment of counsel in December 2005 and defendant Lippsmeyer was appointed.  Plaintiff contends, however, that defendant Lippsmeyer did nothing to litigate his case and only learned from counsel in February 2006 that prison officials had erroneously told Lippsmeyer when he attempted to visit plaintiff that plaintiff had been moved to a different prison.  Plaintiff claims that defendants Malfi and Young are liable for "deliberately permitting subordinates to falsely convey to Defendant Lippsmeyer that Plaintiff was 'not at the prison' for attorney visit."  According to plaintiff, defendant Young is responsible for attorney visits and, for this reason, "knew before hand that Defendant Lippsmeyer was planning to visit Plaintiff in regards to the

---

[1]     The law firm defendant was formerly the firm of Franscell, Strickland, Roberts, Lawrence, and Hsu.

[2]     CSP-Sac. was originally called "New Folsom" and is located next to Folsom State Prison.  Both are located in Represa.  CSP-Sac.'s address is P.O. Box 290002.  Folsom State Prison's address is P.O. Box 71.

[3]     Plaintiff does not state what the outcome of this case was, or attach a copy of the court's order to the instant complaint.

1  petition filed against [CSP-Sac.] officials, and deliberately denied Plaintiff's right to counsel with

2  malicious intent."

3       Plaintiff states that, in February 2006, he filed an inmate grievance regarding his

4  inability to see Lippsmeyer.  He states that, in response, defendant Young generated a

5  memorandum "through subordinates purporting that Defendant Lippsmeyer was contacted and

6  denied ever making an attempt to visit with Plaintiff . . . or scheduling such."  Plaintiff attaches a

7  February 6, 2006, letter from defendant Lippsmeyer regarding his efforts to see plaintiff, which

8  plaintiff states proves defendant Young's "utter fabrication."  Plaintiff adds that defendants Malfi

9  and Grannis, who is the Chief of Inmate Appeals in Sacramento, "then failed to perform duties

10 legally required by failing to correct Defendant Young's unconstitutional impositions, and by

11 permitting Defendant Young to use dishonesty and fabrications during administrative

12 investigations to cover up the deliberate denial of Plaintiff's right to counsel."

13      Plaintiff continues by alleging that he filed a complaint with the State Bar of

14 California "after finding out that Defendant Lippsmeyer acted in concert with Defendants Malfi

15 and Young. . . ."  Plaintiff attaches to his complaint a June 22, 2006, letter from the state bar

16 closing plaintiff's complaint.  That letter states:

17       We have received your complaint, on 5/15/06, against Jon Paul
         Lippsmeyer.  Your allegations may be grounds for a criminal appeal or a
18       civil claim for damages but they do not form the basis for discipline. . . .

19      Plaintiff then alleges that defendant Hsu, an attorney, served a civil subpoena on

20 officials at CSP-Sac. requesting "any and all non-privileged and non-confidential parole and/or

21 incarceration records" relating to plaintiff.  It appears that defendant Hsu represented the County

22 of Los Angeles in a civil rights case pending in the Central District of California.  Plaintiff

23 alleges that, in response to this subpoena, defendants Kelly and Carroll produced records relating

24 to plaintiff's disciplinary history as well as plaintiff's confidential medical file.  Plaintiff states

25 that he filed a grievance concerning this situation on July 27, 2006, but that "each level of review

26 and investigation were obstructed, ignored, and denied by conduct known as the code of silence,

1   which operates to conceal wrongdoings."  Specifically, plaintiff alleges that defendant Carroll

2   admitted in the first level appeal response that he provided defendant Hsu with plaintiff's

3   confidential records but that, defendant Young's second level appeal response stated that there

4   was no record of prison officials ever receiving a subpoena and that defendant Hsu's law office

5   confirmed that no subpoena was ever sent.  Plaintiff asserts defendant Malfi and Grannis

6   "permitted Defendant Young to act with dishonesty and deliberately fabricate Defendants Young,

7   Kelly, and Carroll did not release Plaintiff's confidential medical and mental health records to

8   Defendant Hsu, while Defendant Hsu acted in concert by participating in Defendants' affirmative

9   act. . . ."  Based on plaintiff's factual assertions and the documents attached to the complaint,

10  plaintiff is complaining about two discreet events:  (1) the alleged frustration of a visit from his

11  attorney; and (2) the alleged production of confidential information from his prison files.

12      **B.      Procedural History**

13          The court previously concluded that plaintiff's complaint does not state a

14  cognizable claim with respect to attorney visits.  As to this claim, the court stated:

15              Plaintiff claims that various defendant prison officials
        frustrated an attempt by his attorney, defendant Lippsmeyer, to visit him.
16      He also claims that defendant Lippsmeyer is liable because he "acted in
        concert" with defendant prison officials by telling them that he never
17      attempted to visit plaintiff.  In support of his claim, plaintiff references a
        February 6, 2006, letter from defendant Lippsmeyer in which he states that
18      he attempted to visit plaintiff at CSP-Sac., but was told by prison officials
        that he was not at that institution.  Defendant Lippsmeyer's letter goes on
19      to state that, according to the inmate locator service, plaintiff was in fact at
        CSP-Sac. at the time of the attempted visit.  Plaintiff claims that defendant
20      Young is responsible for attorney visits, that defendant Malfi – the prison
        warden – is responsible for allowing defendant Young to violate his rights,
21      and that defendant Grannis – the Chief of Inmate Appeals – is responsible
        for allowing defendant Young to cover up his violation.
22              While prisoners generally have no right to contact
        visitation, see Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994), they
23      do have a right to contact visitation with their attorneys encompassed by
        their right of access to the courts, see id. at 816; see also Casey v. Lewis, 4
24      F.3d 1516, 1523 (9th Cir. 1993).  As a jurisdictional requirement flowing
        from the standing doctrine, the prisoner must allege an actual injury to
25      successfully plead a claim based on denial of access to the courts.  See
        Lewis v. Casey, 518 U.S. 343, 349 (1996).  "Actual injury" is prejudice
26      with respect to contemplated or existing litigation, such as the inability to

meet a filing deadline or present a non-frivolous claim.  See id.; see also
Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).  Delays in providing
legal materials or assistance which result in prejudice are "not of
constitutional significance" if the delay is reasonably related to legitimate
penological purposes.  Lewis, 518 U.S. at 362.

In this case, defendant Lippsmeyer was appointed to
represent petitioner in the context of a state habeas corpus case.
Therefore, plaintiff suffered no actual injury with respect to bringing
contemplated litigation.  In his February 2006 letter, defendant Lippsmeyer
discusses the merits of plaintiff's state habeas case as follows:

> While there may be some question in my mind
> about the constitutionality of the statutes involved, it seems
> to me that to get anything you want in regard to the various
> appeals would be to resubmit them along with this AG's
> response which indicates that your remedy is to resubmit
> new appeals.  The basic claim that [the AG] seems to be
> making is that "He did not avail himself of his
> administrative remedies" dodge [sic] which is their best
> defense to everything in the world of bureaucracy.
> Unfortunately, it works in the world of habeas corpus as
> well, because the writ procedure is extraordinary relief.  In
> other words, the court will not do anything for you unless
> the harm is clear-cut and you followed their "due process,"
> such as it is.

From this it is clear that, to the extent plaintiff did not prevail in his state
habeas case, it was because he failed to exhaust administrative remedies
and not because of any frustration of his ability to visit with his attorney.
Plaintiff cannot state a claim based on frustration of a visit
with his attorney because he cannot establish any actual injury as a result
of the alleged frustration.

The claim related to attorney visits was dismissed, as was Lippsmeyer as a defendant to this

action.

As to the remaining claim related to disclosure of confidential records, the court

concluded that the complaint may state a cognizable claim against defendants Malfi, Grannis,

Young, Kelly, Carroll, Hsu, and the law firm  of Lawrence, Beach, Allen, and Choi.

Subsequently plaintiff voluntarily dismissed defendants Hsu and the law firm of Lawrence,

Beach, Allen, and Choi with prejudice.  Of the defendants remaining in the action – Malfi,

Grannis, Young, Kelly, and Carroll – summons was returned unexecuted as to defendant Malfi,

defendant Young has filed an answer, and defendants Grannis, Kelly, and Carroll bring the

1    pending motion to dismiss.[4]

2

3                               **II.  APPLICABLE LEGAL STANDARDS**

4            A.     <u>**Motion to Dismiss**</u>

5                    In considering a motion to dismiss, the court must accept all allegations of

6    material fact in the complaint as true.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007).  The

7    court must also construe the alleged facts in the light most favorable to the plaintiff.  <u>See</u> <u>Scheuer</u>

8    <u>v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see also</u> <u>Hosp. Bldg. Co. v. Rex Hosp. Trustees</u>, 425 U.S.

9    738, 740 (1976); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

10   ambiguities or doubts must also be resolved in the plaintiff's favor.  <u>See</u> <u>Jenkins v. McKeithen</u>,

11   395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

12   factual allegations, need not be accepted.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50

13   (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by

14   lawyers.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

15                   Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

16   the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

17   and the grounds upon which it rests."  <u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 544, 555 (2007)

18   (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for

19   failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic

20   recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

21   raise a right to relief above the speculative level."  <u>Id.</u> at 555-56.  The complaint must contain

22   "enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u>  at 570.  "A claim has

23   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

24   _____

25          [4]     With respect to unserved defendant Malfi, the court issued an order to show cause
     on October 2, 2009, why Malfi should not be dismissed for failure to effect service as required by
     Federal Rule of Civil Procedure 4(m).  Plaintiff filed a response on October 22, 2009, alleging
26   that his efforts to locate Malfi have been "stonewalled by CDCR officials."

1   reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

2   1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

3   than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

4   at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

5   it 'stops short of the line between possibility and plausibility for entitlement to relief." Id.

6   (quoting Twombly, 550 U.S. at 557).

7            In deciding a Rule 12(b)(6) motion, the court generally may not consider materials

8   outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

9   Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1)

10  documents whose contents are alleged in or attached to the complaint and whose authenticity no

11  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

12  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

13  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

14  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

15  1994).

16           Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

17  amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

18  curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

19       **B.**      **Motion for Injunctive Relief**

20           The legal principles applicable to requests for injunctive relief, such as a

21  temporary restraining order or preliminary injunction, are well established.  To prevail, the

22  moving party must show either a likelihood of success on the merits of the underlying

23  controversy and the possibility of irreparable injury, or that serious questions are raised and the

24  balance of hardships tips sharply in the movant's favor.  See Coalition for Economic Equity v.

25  Wilson, 122 F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762

26  F.2d 1374, 1376 (9th Cir. 1985).  The two formulations represent two points on a sliding scale

1   with the focal point being the degree of irreparable injury shown.  See Oakland Tribune, 762

2   F.2d at 1376.  Under any formulation of the test, however, the moving party must demonstrate

3   that there exists a significant threat of irreparable injury.  See id.  In the absence of a significant

4   showing of possible irreparable harm, the court need not reach the issue of likelihood of success

5   on the merits.  See id.  The loss of money, or an injury whose measure of damages can be

6   calculated in terms of money, will not be considered irreparable.  See id. at 1334-35.  Finally, the

7   court is unable to issue an order against individuals who are not parties to a suit pending before

8   it.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).

9

10                                   **III.  DISCUSSION**

11        **A.        Motion to Dismiss**

12               Moving defendants Carroll, Grannis, and Kelly argue that plaintiff's factual

13   allegations do not reflect that they violated any constitutional right.  According to defendants:

14               Williams' complaint contains one sentence that claims Carroll and
       Kelly disclosed his medical records and another that asserts Grannis failed
15     to prevent the disclosure. (CR 18 pp. 4:12-14, 6:12-23).  However,
       Williams' entire complaint, including the exhibits and remaining
16     allegations, fail to clarify these two vague and conclusory sentences.
       When read together, Williams' entire complaint establishes that: (1)
17     Williams' allegation against Carroll and Grannis concerns only their
       review of Williams' grievances; and (2) neither Kelly nor Grannis
18     participated in the conduct alleged by Williams.

19                           * * *

20               Williams does not claim that Carroll played any role in the case
       until after Williams' records were disclosed to [the law firm] on October
21     11, 2005.  Williams filed a grievance on June 23, 2006, and Carroll
       assessed Williams' allegations at the first level of review on September
22     11, 2006. (CR 18 p. 25).  Even reading all of the facts in a light most
       favorable to Williams, that is the full extent of his allegations against
23     Carroll.  Therefore, at most, Williams claims that he is dissatisfied with
       Carroll's response to his grievance.  But even assuming that Carroll failed
24     to adequately respond to the grievance, Williams has failed to state a claim
       because he does not have any right to a grievance process.  Accordingly,
25     Williams' complaint fails to state a claim against Carroll.

26   ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14

     Similarly, Williams' allegations against Grannis concern only the grievance that Williams filed eight months after CSP-Sacramento sent his records to [the law firm]. Williams' records were located at CSP-Sacramento in Represa, California. (CR 18 p. 2). Grannis worked in Sacramento, California, as the Chief of [the Inmate Appeals Branch of CDCR]. (CR 18 pp. 2, 22). Williams does not allege that Grannis participated in the disclosure of his records. (CR 18). Instead, Williams has attached a copy of Grannis' job duties and argues that Grannis could have prevented the disclosure because her job requires a working knowledge of prison operations. (CR 18 p. 6). However, Grannis' duty statement establishes that Grannis supervises the processing of inmate grievances . . . and she does not have any duties at CSP-Sacramento. (CR 18 p. 83). Because there is no dispute that Williams' allegations against Grannis concern only the processing of a grievance, Williams has failed to state a claim against Grannis. (CR 18 p. 22).

     Moreover, Williams' exhibits indicate that R. Manuel, not Grannis, conducted the Director's level review of Williams' grievance. (CR 18 p. 22). Accordingly, Williams' complaint also establishes that Grannis did not participate in the conduct alleged, the Director's level review of Williams' grievance. For this additional reason, the Court should grant Grannis' motion to dismiss.

     Similarly, an exhibit to Williams' complaint indicates that Karen Kelly played no role in the subject incident. Williams' claims that staff at CSP-Sacramento gathered his records and sent them to [the law firm] on October 11, 2005. An exhibit to Plaintiff's complaint indicates that Kyle Kypke gathered his records on October 11, 2005.

15 A detailed review of the amended complaint and exhibits attached thereto reveals the following

16 allegations relating to Grannis, Carroll, and Kelly, consistent with defendants' summary:

17
18

    Page 4, lines 11-14   Plaintiff's confidential mental health and medical records were disclosed by defendants Carroll and Kelly.

19
20
21

    Page 5, lines 5-9    Defendant Carroll addressed plaintiff's inmate grievance at the first level and "admitted to being responsible for photocopying the private, privilege, and confidential records in dispute which were then turned over to Defendant Young. . . ."

22
23

    Page 6, lines 12-21   Defendant Grannis "omitted to perform duties legally required causing the deprivation upon which Complaint is made. . . ."

24
25

    Exhibit D       December 13, 2006, Director's level appeal decision on plaintiff's grievance regarding disclosure of confidential information. This decision was signed by "R. Manuel" for defendant Grannis.

26 / / /

| | |
|---|---|
| Exhibit D | September 11, 2006, first level appeal response signed by defendant Carroll. |
| Exhibit H | October 11, 2005, declaration of custodian of records Kyle Kypke regarding plaintiff's records. |

At the outset, the court agrees with defendants that plaintiff does not have any stand-alone constitutional right related to processing of his inmate grievances.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process).  Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances.   Numerous district courts in this circuit have reached the same conclusion.  See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that the grievance process failed to function properly failed to state a claim under § 1983).

With the foregoing in mind, the court concludes that plaintiff cannot state any claim against defendant Grannis, who held a supervisory position related to review of inmate grievances.  Specifically, as defendants note, plaintiff's exhibits reflect that R. Manuel – not defendant Grannis – wrote the Director's level appeal decision.  Thus, Grannis simply had no involvement in the alleged improper disclosure of confidential records.  And, even if Grannis had authored the Director's level decision, there is no stand-alone right related to the processing of inmate grievances.  Defendant Grannis should be dismissed.

///

1         Similarly, as defendants note, plaintiff's only allegations as against defendant

2    Carroll concern the September 11, 2006, first level response.  Because plaintiff has no

3    constitutional right related to processing or handling of inmate grievances, defendant Carroll

4    should also be dismissed.

5         As to defendant Kelly, it appears that plaintiff assigns liability based on his

6    apparent contention that defendant Kelly was responsible for actually gathering and providing his

7    confidential health information to the law firm.  Any such contention, however, is belied by

8    plaintiff's exhibits which reflect that Kyle Kypke – not defendant Kelly – gathered and produced

9    plaintiff's documents.  Thus, there are no allegations to establish the participation of defendant

10   Kelly in any constitutional violation.

11        **B.    Motion for Injunctive Relief**

12        In his motion for injunctive relief, plaintiff alleges that defendant Grannis has

13   engaged in acts of retaliation for plaintiff having filed this lawsuit.  The court cannot recommend

14   granting relief for two reasons.  First, plaintiff has not established the likelihood of irreparable

15   injury because any claim that defendant Grannis has engaged in acts of retaliation can be

16   redressed in a separate lawsuit alleging same.  Second, for the reasons discussed above, the court

17   finds that defendant Grannis should not be a defendant to this action.  Based on this finding, the

18   court is unable to grant injunctive relief against a non-party.

19        **C.    Defendant Malfi**

20        Finally, the court addresses non-service of defendant Malfi.  Upon further

21   consideration, the court now concludes that plaintiff cannot state a claim against defendant Malfi,

22   who is sued in his supervisory capacity.  Supervisory personnel are generally not liable under

23   § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.

24   1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only

25   liable for the constitutional violations of subordinates if the supervisor participated in or directed

26   the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant

1    can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct

2    because government officials, regardless of their title, can only be held liable under § 1983 for

3    his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 129 S.Ct. 1937,

4    1949 (2009).  When a defendant holds a supervisory position, the causal link between such

5    defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

6    Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

7    1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel

8    in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

9    Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the

10   official's own individual actions, has violated the constitution."  Iqbal, 129 S.Ct. at 1948.  In this

11   case, plaintiff's allegations that defendant Malfi is responsible solely because of his supervisory

12   role is insufficient.

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

      1.     Defendants' motion to dismiss (Doc. 20) be granted;

      2.     Defendants Grannis, Kelly, Carroll, and Malfi be dismissed with prejudice;

      3.     This action proceed on plaintiff's claim relating to disclosure of confidential information as against defendant Young only; and

      4.     Plaintiff's motion for injunctive relief (Doc. 22) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 15 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 3, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE